UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

X------------------------------------------------------X

ARELIS DE LA CRUZ, JONATHAN

DE LA CRUZ, CARLOS RODRIGUEZ                    CIVIL ACTION NO.

CHARLIE RODRIGUEZ, FRANCISCO                    CIVIL COMPLAINT

TAVERAS, STERLING SANTANA,

ADRIAN DE JESUS RODRIGUEZ

           Plaintiffs,                              JURY TRIAL DEMMANDED

      -v-

CITY OF NEW YORK, N Y CITY POLICE DEPARTMENT

POLICE OFFICER JOSHUA

MOSCOSO SHIELD NO. 11260, POLICE

OFFICER CHRISTIAN ANASA SHIELD NO. 14741, POLICE

OFFICER LOPEZ STEVEZ SHIELD NO. 17797,

POLICE OFFICER HOTONIEL DIAZ NO. 16543,

P.O. GARRETT WILLIAMS NO. 24151,

P.O. BRIAN FERMIN SHLD NO. NOT KNOWN

AND POLICE OFFICERS JOHN AND JANE

DOES, IN THEIR INDIVIDUAL AND PROFE-

SSIONAL CAPACITIES,

          Defendants.

X---------------------------------------------------------X

## NATURE OF THE ACTION

1. On February 26, 2023, at about 7:20 P.M. Plaintiffs were on their way to their grandparents' house carrying the leftovers from their grandparents' 50-year wedding anniversary celebration. Plaintiffs were accompanied by several family members and friends.
2. The anniversary celebration was conducted in the basement of their local church, Saint Rose of Lima, which is one city block away from the grandparents' apartment. Plaintiffs and

*1*

several of their family members are parishioners at Saint Rose. They are similarly situated and are therefore jointly suing the defendants for their actions and inactions against them.

3. As they were peacefully walking, they were approached by members of the New York City Police Department, NYPD, and were viciously and maliciously attacked and assaulted by members of the New York City Police Department, hereinafter NYPD.

4. Plaintiffs ARIELIS DE LA CRUZ, JONATHAN DE LA CRUZ, CARLOS RODRIGUEZ, CHARLIE RODRIGUEZ, STERLIN SANATA, ADRIAN DE JESUS RODRIGURZ and FRANCISCO TAVERAS were viciously, unlawfully and without any probable cause or provocation on their part, stopped, arrested, viciously assaulted, and subjected to unlawful arrest, imprisonment and prosecution by the New York City Police Department. Their Constitutionally guaranteed civil rights were trampled by uniformed members of the NYPD, while acting in their official capacity and on behalf of the City of New York, under color of law.

5. These unlawful acts took place in front of their family, friends and neighbors and were done without any provocation on their part, any justification or any probable cause. The police used unnecessary and excessive force while effectuating and unlawful and illegal false arrest of the Plaintiffs.

6. There was no justification or probable cause to do this, other than the fact that it was a group of young Dominicans in Washington Heights walking across a city park, across the street from a church, carrying food and leftovers. This unlawful act merely served to generate overtime for the aggressive, untrained and unsupervised officers involved.

7. The plaintiffs were handcuffed in front of their family, friends and neighbors causing them great shame, embarrassment and humiliation.

8. Plaintiffs were kicked, shoved, pushed, punched and otherwise beaten during this illegal arrest process.

9. Plaintiffs suffered a great deal of pain and suffering as a result of the beating that they received at the hands of the NYPD, requiring medical attention, including surgery.

10. In addition, the plaintiffs suffered psychological and emotional pain, humiliation, as a result of being manhandled, beat up, assaulted and battered in front of their loved ones and neighbors.

11. Plaintiffs were taken to the 33 police precinct where they were kept in a cell while other prisoners that had been brought to the precinct after them were taken to court in order to be arraigned. Adrian De Jesus Rodriguez and Sterling Santana were issued Desk Appearance Tickets and released after a few hours.

12. Plaintiffs were not provided with any food or water while inside the 33 police precinct. They were also not provided with a sanitary and hygienic toilet facility. In fact, when Arielis De La Cruz complained and said that she needed to use the bathroom she was told that she should urinate on the floor of the cell.

13. Plaintiffs were belittled at the precinct and accused of having assaulted the officers when in fact they were the victims of the assault, and as result of this arrest they are now afraid of the NYPD.

14. Plaintiffs were further humiliated and mistreated by being accused falsely and maliciously of Obstructing Governmental Administration, assault, aggravated harassment, and Resisting Arrest.

2

15. Plaintiffs had to retain the services of an attorney thereby spending funds that they did not have.

16. Plaintiffs cooperated both with the New York County District Attorney's Office and the Internal Affairs Bureau of the NYPD in their investigation of the incident.

17. After a full and thorough investigation, the case against the defendants, now plaintiffs, was dismissed. However, this happened after several adjournments which caused plaintiffs to travel to 100 Centre Street and spend several hours there. The dismissal was made on the motion of the People of the State Of New York who realized that further prosecuting the case was a travesty of justice and would result in a jury verdict favorable to the defendants, plaintiffs herein.

18. By this civil action Plaintiffs seeks a remedy for the ongoing custom and policy of the NYPD of racially profiling, abusing and discriminating against members of the minority communities, including the Dominican Community, in New York City.

19. Plaintiffs seek money damages, attorney's fees and such further relief as this court may deem just and proper.

20. Plaintiffs seek a remedy for the ongoing custom, policy and practice of racial abuse and discrimination implemented by Defendants, including individual Defendants herein as the final policy makers for the actions and abuses alleged in this complaint.

21. In addition to implementing these policies, Defendants have failed to properly train their employees, discipline and to properly supervise them; allowing them to run amok amongst innocent citizens who are injured thereby, as a direct consequence of the City's failure to properly train, discipline and supervise its police force.

22. Further, Defendants acted under color of law, within the scope of their employment, with deliberate indifference to constitutional rights in violations of the rights of young Dominicans such as Plaintiff, in a deliberated and continued custom, policy and/or practice of going after young Dominicans, Black and Latinos for a disproportionate number of arrests as determined in Floyd v. City of New YORK, 959 F. Supp. 2d 540.

23. The actions of the Defendants, performed under color of law, amounted to a municipal policy in violation of 42 USC SECT. 1983 and the rights guaranteed in 42 USC Sect. 1981 together with the equal protection clause of the Fourteenth Amendment of the Constitution.

24. By this action Plaintiff seeks money damages arising out of and as a consequence of the violation of his Constitutional rights as guaranteed by 42 USC Sect. 1983, as well as for assault, battery, humiliation, infliction of emotional distress, wrongful arrest, false imprisonment, and other torts.

25. This action was initiated within three years after the plaintiff's claim originated, following the dismissal of criminal charges and the sealing of related matters in favor of the plaintiff. Therefore, it is considered timely. Certificates of Disposition, where appropriate and available, are attached hereto.

26. Plaintiffs are similarly situated and are therefore joined in this lawsuit against the defendants. The Plaintiffs were attacked at the same time and place by the same officers who proceeded to violate plaintiffs' constitutional rights and to assault them.

JURISDICTION AND VENUE

3

27. This civil action is being brought pursuant to 42 USC Sects. 1893, 1981 and 1988, seeking redress, compensation and/or remedy for the violations of the Plaintiffs' constitutionally guaranteed rights under Fourt and Fourteenth Amendments of the United States Constitution as well as the Constitution of the State of New York together with rights derived from common law.

28. This Honorable Court has subject matter jurisdiction over Plaintiff's Federal Claims herein pursuant to 28 USC Sect 1331 and over Plaintiff's State Law Claims pursuant to 28 USC Sect.1367 (a).

29. The venue herein is proper under 28 USC Sect. 1391(a) in that all of the events alleged herein, and which events give rise to Plaintiff's claims, arose within the jurisdictional borders of the Southern District of New York. The park across from 511 West 165 Street, New York, N.Y. is within the jurisdictional boundary of the Southern District of New York.

30. Plaintiffs filed a timely Notice of Claim on May 30, 2023.

## JURY DEMAND

31. Plaintiffs demand trial by jury in this action.

## PARTIES

32. Ms. ARIELIS DE LA CRUZ, the plaintiff herein, is a young Latino female who was 23 years old at the time of this humiliating, traumatic and unlawful arrest.

33. Plaintiff is an American Citizen.

34. She is 5"6" and weighs approximately 140 pounds.

35. The plaintiff resides in NEW YORK, New York, 526 West 166th Street, Apt. 3D, NY NY.

36. At the time of her arrest, she was gainfully employed AT Tony's Shop and Save Market as a store manager. At the time of this false arrest, she had been working at Tony's for 3 years and 6 months.

37. The Plaintiff did not have a criminal record at the time of the arrest and continues to have no criminal record. She was traumatized by this unfortunate and negative experience. All of the plaintiffs were traumatized by this.

38. The plaintiff was living at home with her family at the time of the arrest.

39. Plaintiff CHARLIE RODRIGUEZ is also a young Latino, he was 47 years old at the time of this false arrest, he is a resident of the State of New York and a citizen of the United States.

40. Plaintiff Charlie Rodriguez resides at 444 Kimball Ave., Yonker, NY 10704.

41. Plaintiff, Charlie Rodriguez, resides within the jurisdictional confines of the SDNY.

42. Plaintiff Charlie Rodriguez was employed by Consolidated Bus Company as a bus driver at the time of this false arrest. He had been working in this bus company for 21 years at the time of this false arrest.

43. Plaintiff Charlie Rodriguez had not been arrested before and at the time of this arrest did not have a criminal record.

44. Plaintiff JONATHAN De La CRUZ was 20 years old at the time of this traumatic, unfortunate and humiliating false arrest.

4

45. Plaintiff Jonathan De La Cruz resides at 526 West 166 Street, Apt. 3D, New York, N.Y. 10032.

46. Plaintiff Jonathen De La Cruz is a resident of the City of NY, a Citizen of the US and resides within the jurisdictional confines of the SDNY. In fact, all of the Plaintiffs, except one, are United States Citizens.

47. Plaintiff Jonathan De La Cruz has no criminal record and is gainfully employed at Tony's Shop and Save as a store manager. He had been working there for 3 years and 7 months at the time of this false arrest.

48. Plaintiff FRANCISCO TAVERAS is a young Latino who was 27 years old at the time of this unfortunate and malicious false arrest.

49. Plaintiff Francisco Taveras resides at 444 Kimball Avenue, Yonkers, N.Y. 10704; within the jurisdictional confines of the SDNY.

50. Plaintiff Francisco Taveras had never been arrested before.

51. Plaintiff Francisco Taveras was employed at Quest Diagnostics at the time of his arrest.

51. Plaintiff CARLOS RODRIGUEZ was 30 years old at the time of the arrest.

52. Plaintiff Carlos Rodrigues is a Citizen of the US, has no criminal record and was gainfully employed when arrested.

53. Plaintiff STERLING SANTANA is a Legal Permanent Resident of the United States.

54. Plaintiff Sterlin Santana had no criminal record at the time of this brutal and capricious false arrest and was gainfully employed.

55. Plaintiff Sterlin Santana is a young Latino. He was 32 years old at the time of this unnecessary false arrest.

56. Plaintiff Sterling Santana resides at 526 West 166th Street, N.Y. N.Y. 10032. He had been residing at 241 Hilltop Drive, Brentwood, NY 11717.

57. Plaintiff Sterling Santana was a Legal Permanent Resident of the US at the time of this false arrest.

58. Plaintiff Adrian De Jesus Rodriguez is a United States Citizen and was 20 years old at the time of the arrest.

59. All Plaintiffs had to seek medical attention after this false arrest and as a direct consequence of this brutal, malicious and unfounded false arrest and prosecution.

60. Members of the NYPD all employed by the City of NY used unnecessary and brutal force while falsely arresting the Plaintiffs.

61. Defendant City of New York is a municipal corporation organized and existing under the laws of the State of New York and it maintains its principal office in the county of New York. The NYPD is an agency of the City of New York charged with enforcing the law, and ostensibly protecting the denizens and citizens of the City of New York.

62. Eric Adams, was at all times relevant to this Complaint the Mayor of the City of New York and therefore the City's chief policy maker with respect to the policies and practices of said City, including its police force. He is the chief policy making official with respect to City policy generally, including NYPD POLICY. He is being sued in his official and individual capacities.

63. Police Commissioner Keechant Sewell, was at all times relevant to this complaint the Police Commissioner of the City of New York, who has final policy making authority with

5

71. The plaintiffs' ultimate destination was 526 West 166th Street, Apt 2c, NY, NY, the home of their grandparents, Rosa Espinal and Pedro Torres, Mr. Torres has since passed away.

72. Plaintiffs were assaulted, handcuffed, and manhandled, all while being falsely and maliciously arrested. As stated above, Plaintiff were not engaged in any illegal, criminal or suspicious conduct. They were merely walking, with family and friends. Other than being a group of young Dominican walking in Upper Manhattan, they had done nothing wrong.

73. After being verbally and physically assaulted, plaintiffs, all working young individuals with no criminal record, were taken to the 33 police precinct where they were processed. Sterling Santana was issued a Desk Appearance Ticket by Police Officer MOSCOSO.

74. At the precinct the mistreatment continued. Police Officer Joshua Moscoso falsely claimed that Ms. De La Cruz and the other Plaintiffs had assaulted him and his fellow officers. This resulted in all of the officers at the precinct treating the plaintiffs in a mean, harsh, unprofessional and brutal manner.

75. Defendant JOSHUA MOSCOSO filed false criminal court complaints alleging, inter alia, that Arielis De La Cruz had punched P.O. ANASA, that Plaintiff Arielis De La Cruz had resisted when being arrested by P.O. VALERIO, that while resisting arrest Arielis De La Cruz had kicked Lieutenant Garcia in the genitalia, that at the same time Plaintiff Francisco Taveras ran up and punched P.O. ANASA in the right side of his face. P.O. MOSCOSO then states that he was informed by P.O. BRIAN FERMIN that Pos BRIAN FERMIN, GARRETT WILLIAMS AND HOTONIEL DIAZ attempted to place Francisco Taveras under arrest and that he resisted making it difficult for the three officers to arrest him.

76. P.O. JOSHUA MOSCOSO also filed a false criminal court complaint alleging that he observed Plaintiff Jonathan De La Cruz strike him with a closed fist in the jaw. He further alleges that P.O. RAYMOND PEREZ NO. 970770 attempted to handcuff Jonathan De La Cruz and Jonthan resisted forcing P.O. PEREZ to tackle Jonathan. P.O. MOSCOSO then observed Jonathan running into the driver's side mirror of the police cruiser. This false made-up allegation caused PO MOSCOSO to falsely accuse Plaintiff JONATHAN DE LA CRUZ of auto stripping in the Third Degree.

77. PO JOSHUA MOSCOSO falsely and maliciously accused Plaintiff Charlie Rodriguez that while all of the above actions were taking place, at the same time, Charlie Rodriguez pushed him (MOSCOSO) into the hood of his car, and then placed his right elbow and forearm into MOSCOSO'S throat, applying pressure and making it difficult for MOSCOSO to breath. Then MOSCOSO alleges that he saw PO CHRISTIAN ANASAS attempt to arrest Charlie Rodriguez, MOSCOSO then observed PO O'SHEA attempt to also arrest Charlie Rodriguez, Charlia Rodriguez allegedly refused to be arrested requiring PO O'SHEA to pin him against a tree.

78. P.O. JOSHUA MOSCOSO also arrested Plaintiff Carlos Rodriguez charging him with 11 eleven misdemeanors: including Assault with intent to cause physical injury, Harassment in the Second Degree, Recklessly Causing Physical Injury and other charges. All of which were dismissed.

79. P.O. JOSHUA MOSCOSO also arrested Plaintiff Sterling Santana and charged him with allegedly carrying an open container.

6

80. All of the arrests mentioned herein occurred at the same exact time and place and all of the false complaints were sworn to under penalties of perjury by DEFENDANT P.O. JOSHUA MOSCOSO.
81. The plaintiffs were treated in a sub-human, uncivilized, demeaning and unlawful manner BY THE POLICE OFFICERS BOTH AT THE SCENE OF THE UNLAWFUL FALSE ARREST AND AT THE 33 POLICE PRECINCT.
82. Plaintiffs remained at the precinct longer than other prisoners that were brought in, processed and taken to Central Booking. All to "punish" them for allegedly assaulting a cop and allegedly resisting arrest, all except Sterling Santana who was issued a DAT.
83. The plaintiffs were arraigned eventually and released by the presiding judge.
84. However, the Plaintiffs had to attend several court proceedings, they cooperated with internal affairs, who interviewed them, and with the NY County DA's Office.
85. The DA, after a full and thorough investigation, moved to dismiss all charges and to seal the Matters.
86. The plaintiffs suffered several injuries, some of which required medical attention.
87. This unfortunate experience caused the plaintiffs to suffer severe emotional distress. The plaintiffs were physically assaulted, verbally berated, abused, assaulted and demeaned, to the point that to this day some of them still suffer back pain, shoulder pain and they all suffer great shame and embarrassment. Since they were brutally arrested in front of a group of family, friends and neighbors.
88. The Plaintiffs did not receive any medical attention or food while at the precinct, where they remained for several long hours.
89. The plaintiffs had been very proud of the fact that they grew up in this drug and crime infected area during the crack epidemic and they had never been arrested, nor had they done anything to cause them to be arrested and yet, on this night they were beaten up and arrested by the NYPD in front of the whole neighborhood. This terrible incident marked them for life.

## CLAIMS FOR RELIEF

Plaintiffs allege violations of their civil rights and make claims under 42 USC Sect. 1983 for violations of their rights under the Fourth Amendment and the Fourteenth Amendments as against all defendants herein for inter alia USE OF EXCESSIVE FORCE, FALSE ARREST, MALICIOUS PROSECUTION, ASSAULT, BATTERY, INFLICTION OF MENTAL DISTRESS, HUMILIATION AND OTHER RELATED CHARGES.

90. Plaintiffs incorporate by reference the factual allegations set forth herein.
91. The plaintiffs allege that both the Fourth and the Fourteenth Amendments to the Constitution of the US protect them, and individuals like them, from the unreasonable and excessive use of force, by the police, before, during and after an arrest, from false and malicious accusations and from the deprivation of their liberty and their right of movement.
92. The defendants herein, individually and in their official capacities, have created and implemented, enforced, sanctioned, ratified, encouraged, and/or turned a blind eye to the use of excessive police force against members of the public, particularly minority members

7

of the population. They have created a culture of violence and discrimination against minorities. The use of various forms of excessive force and violence while arresting minorities has become an endemic and sickening practice and modus operandi of the NYPD. All with the official sanction of both elected officials and high-ranking members of the department. The Defendants have failed in their duty to properly train its police force, they have failed in the proper screening and weeding out of bad apples, they have failed to properly train the members of the police force, and they have failed to properly supervise the members of the police force. There is also a failure to adequately and properly monitor, discipline the members of the police force and there is an overt and tacit encouragement and sanctioning of, and the failure to rectify the police force practice of using excessive, and at times deadly, force while effectuating an arrest, even while making an unlawful and false arrest, such as herein.

93. These unconstitutional policies, practices and custom include, but are not limited to, assaulting plaintiffs herein, causing injuries to their shoulder, and other parts of their bodies as will be more specifically explained below, handcuffing them tightly and doing so in front of family and friends, tackling plaintiffs, battering plaintiffs, ganging up on each individual plaintiff like a group of jackals, and purposedly delaying the arrest process in order to keep plaintiffs incarcerated for a longer period of time.

94. Plaintiffs, as a result of these policies, custom and practices have suffered the deprivation of their liberty, by being falsely and maliciously arrested, plaintiff had their constitutional rights violated and were caused to suffer great pain, shame, embarrassment, humiliation and emotional strain, pain and distress.

95. The defendants' actions show a clear indifference to the Fourth and Fourteenth Amendments of the Constitution, and to the rights that they guarantee to the plaintiff. The defendants' acts and omissions were the direct and proximate cause of the violation suffered by the plaintiff. The defendants, acting under color of state law, violated plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment, the Defendants violated 42 USC Sect. 1983.

96. The Plaintiff suffered significant physical pain, which continues to this day, and emotional damage as a direct and proximate result of the Defendants' illegal conduct.

SECOND CAUSE OF ACTION

42 USC SECT. 1983 EQUAL PROTECTION

97. Plaintiff incorporates by reference the allegations set forth in the factual allegations.

98. By the actions described above, inter alia, The Defendants in their individual and official capacities have denied PLAINTIFFS' rights, based on their ethnic origin, their race, the full and equal benefit of all laws and proceedings or the security of property and persons that is enjoyed by non-minority citizens, Anglo Saxons, Aryans and similar other non-minority citizens of the United State, in violation of the equal protection clause of the Fourteenth Amendment as well as in violation of 42 USC Sects. 1981 and 1983.

99. These violations are particularly serious in that at all times the Defendants acted under color of law as a policy intended to deprive the PLAINTIFFS, and others similarly situated, of

8

their right to be free from police abuse, as well as from unlawful search, seizure, false arrest, and other such violations BECAUSE of their race or ethnicity. Defendants undertook such acts as a deliberate municipal policy in order to subject the PLAINTIFFS to a deprivation of their rights under the State and Federal Constitutions, as well as the common law.

100.    All of the Defendants participated personally in violating THE PLAINTIFFS' rights as alleged herein.

101.    The direct and proximate result of defendants' violations of plaintiffs' rights resulting from their illegal conduct and policies is that PLAINTIFFS suffered significant physical and emotional pain, SUFFERING and damages as described herein.

## THIRD CAUSE OF ACTION

### 42 USC SECT. 1983 for Violations of the Fourth

### Amendment- Unlawful Seizure Against ALL Defendants

102.    Plaintiff incorporated by reference the allegations set forth in the factual allegations herein.

103.    It is well settled that the Fourth Amendment protects ALL individuals from unlawful detention and arrest as occurred herein.

104.    All the Defendants, have implemented, enforced, encouraged, carried out, sanctioned, and/or ratified policies, practices, and/or customs of effectuating unlawful detentions and arrest against minorities, including Dominicans, without probable cause, in violation of the Fourth Amendment, including failing to ensure that proper investigations are conducted prior to arresting individuals, failing to properly approach citizens when they are going about minding their own business without engaging in any criminality and/or acting in a manner that giver rise to probable cause, including failing to ensure that constitutional guidelines are followed when approaching a group of individuals who are peacefully walking on the public thorough fares of the city and arresting people without giving them the opportunity to follow whatever orders the police may want them to follow and thereby arresting plaintiff without any probable cause and/or criminality on Plaintiff's part.

105.    As a result of these policies, practices, omissions and customs the plaintiffs were deprived of their liberty, and had their civil rights violated; they were assaulted, were injured about their bodies and were caused to suffer mental anguish. They were subjected to cruel and extreme pain and suffering.

106.    The Defendants have acted with extreme and unusual indifference to each individual Plaintiff's Constitutional Rights, including Plaintiff's rights under the Fourth Amendment. Defendants' acts and omissions have proximately and directly violated Plaintiff's Fourth Amendment's Rights, they violated 42 USC Sect. 1983, which clearly prohibits under color of state law the deprivation of rights secured and guaranteed by the Constitution of the United States of America.

107.    As a proximate and direct result of Defendants' illegal conduct the Plaintiffs, Ms. DE LA CRUZ, MR. DE LA CRUZ, MR. SANTANA both Mr. RODRIGUEZ an Mr. TAVERAS suffered significant physical pain and emotional damage as described herein, including, but not

9

limited to, shoulder damage, rib damage, neck, back and right shoulder, contusions, abrasions, teeth/tooth injury.

108.     Plaintiffs still suffer from the emotional pain this brutally psychological trauma caused them, since they had never been arrested before, never envisioned being arrested and definitely never envisioned being falsely and illegally arrested in front of family and friends.

## FOURTH CAUSE OF ACTION

### EXCESSIVE FORCE under both the U.S. Constitution and the New York State Constitution

109.     Plaintiff incorporates by reference the allegations set forth in the factual allegations.

110.     Defendants, Police Officers JOSHUA MOSCOSO, NASA, LOPEZSTEVES AND DIAZ, as well as others, ALL members of the New York City Police Department, used unjustified, brutal an excessive force against all of the Plaintiffs, in violation of the Constitutions of the US and the State of New York, causing severe injuries and great pain and suffering.

111.     The NYPD'S unconstitutional abuses and violations were, and are, directly and proximately caused by policies, customs and/or practices, implemented, carried out, devised, enforced, encouraged, purposedly ignored, and/or sanctioned by Defendant. None of the defendants herein have been disciplined for their abuses, including subjecting innocent individuals to be falsely and brutally arrested and detained, while using unnecessary and excessive force during the arrest process.

112.     As a result of these abuses, the Plaintiffs were deprived of their liberty and constitutional rights; they also experienced bodily injury, pain and suffering, plus psychological damage.

113.     At the time that the defendants were using excessive force, the defendant police officers were acting within the scope of their employment, in uniform and under color of law. Defendant City of New York, as the employer of the NYPD officers, defendants herein, is responsible for their wrongdoings, abuses, and violations under the theory of respondeat superior and vicarious liability.

114.     The defendants City of New York and New York Police Department have failed to properly train, maintain, supervise and otherwise control members of its police force, such as defendant police officers herein. This lack of training and supervision is not only a direct cause of the injuries claimed herein; but it is also a clear violation of their legal obligations and duty to protect the public. It is also clear proof of their lack of interest in protecting minority communities from unlawful police conduct.

115.     As a direct and proximate result of defendants' illegal and abusive conduct, plaintiffs suffered significant pain and emotional damage as described herein.

## FIFTH CAUSE OF ACTION

### Unlawful Seizure under both the US Constitution and the Constitution of the State of New York

116.     Plaintiff incorporates by reference the allegations set forth in the factual allegations.

10

117. The Defendant police officers, all member of the NYPD, seized plaintiffs without probable cause, or the reasonable articulable suspicion of criminality required by both the US Constitution and the Constitution of the State of New York.

118. The NYPD's unconstitutional violations, abuses and behavior were, and are, directly and proximately caused by policies, practices, and/or customs devised, implemented, carried out, enforced, encouraged and/or sanctioned by Defendants.

119. As a result of these violations and abuses, the plaintiffs herein were deprived of their liberty, their freedom of movement and their constitutional rights.

120. At the time that the defendants police officers, members of the NYPD, seized the plaintiff they were in uniform and were acting within the scope of their employment. Defendant City of New York, as the employer of these police officers, defendants, is responsible for their wrongdoings and violations under the theory of respondeat superior, and vicarious liability.

121. The unconstitutional abuses of the NYPD were, and are, directly and proximately caused by the policies, practices, and/or customs devised, encouraged, sanctioned, implemented, enforced, carried out and encouraged by Defendants.

122. Plaintiff was illegally, wrongfully and unconstitutionally arrested and detained, all through no fault of his own and without probable cause or any legitimate reason or excuse to do so.

123. This unlawful arrest was a direct result of defendant City of New York failure to properly train, supervise and control its police force, whose members herein, acting under color of law and on behalf of said city abused their position and power in order to detain plaintiff and restrict his freedom of movement.

124. At the time of the incident involving the plaintiff, the NYPD officers named as defendants were acting within the scope of their employment, under color of law, and as agents of the City of New York and the New York City Police Department. They were acting as agents of defendants, empowered and authorized by them to do so. The Defendant City of New York, as the employer of the NYPD officers, defendants herein, is responsible for their wrongdoings and abuses under the theory of respondeat superior, and vicarious liability.

125. As a direct and proximate result of the defendants' illegal and unconstitutional conduct and behavior the plaintiff suffered significant physical pain and emotional damages as described herein, as well as having his freedom of movement restricted.

SIXTH CAUSE OF ACTION

MONELL CLAIM: MUNICIPAL LIABILITY

126. Plaintiff incorporates by reference all prior allegations alleged herein.

127. Prior to February 26, 2023, Defendant City developed and maintained policies and customs which deprived the plaintiff of his constitutional rights.

128. Prior to February 26, 2023, the responsible policy makers in the City of New York knew or could have reasonably known with a minimal amount of care, diligence and/or investigation of the propensity of defendants' police officers herein, to make false and

11

unreasonable and unlawful detentions, arrests, assaults and searches of citizens in the city of New York. That these officers engaged in a pattern of illegal and unconstitutional conduct against the citizens of the city of New York, including performing assaults, false arrests, and malicious prosecutions of citizens within the City of New York, including illegal searches of arrestees. Specifically, the Defendant City knew or should have known that Police Officers Joshua Moscoso, Nasa, Lopezstevez, Diaz and others, often had falsely arrested, searched and assaulted numerous individuals leading to tainted prosecution, and the ultimate dismissal of all false charges, as herein.

129.    Despite knowledge of the aforementioned practice and illegal conduct, the Defendant City failed to train, supervise, chastise, remove, or otherwise take any action to protect the citizens of New York or to ensure that these officers acted in a manner that was constitutionally proper and accepted. Instead, these officers were never disciplined and allowed to this unconstitutional practice and abusive behavior. For instance, PO JOSHUA MOSCOSO has had various civil lawsuits filed against him. He has also had several complaints filed against him with the Civilian Complaint Review Board.

130.    Defendant City developed and adopted a "hands off" policy of custom with regards to such illegal and unconstitutional acts committed by police officers, which led the individual defendants herein to believe that they could violate the constitutional rights of the plaintiff with impunity and with the implicit or tacit approval of the CITY, in violation of Section 1983.

131.    As a result of the foregoing the plaintiff sustained damage and injuries previously described and seeks compensatory damages from the City of New York.

132.    As evidenced by the numerous lawsuits filed against PO Moscoso et al, the Defendants NYPD and City of New York knew, were aware of or should have known and been aware of the danger that these police officers defendants posed to the public, more specifically, members of the minority community.

133.    In fact, Defendant Joshua Moscoso engaged in a pattern of making illegal and malicious false arrests motivated by the desire to make extra money through the overtime that accompanied every false arrest; as evidence by the fact that he earned approximately $252,000.00 dollars in 2023 according to the attached computer printout. This is more than three times the base salary of $67,992.00.

134.    Yet the Defendants NYPD and City failed to take ANY steps to rein him in, to train him, to discipline him or to even investigate him. He is the poster child of the abuses, neglect, illegal and bad practices of the NYPD. Unfortunately, this evinces a pattern and practice of abuse and neglect dripping all the way down from City Hall through One Police Plaza, the local police precincts and ending up on the streets of New York.

DAMAGES

135.    As a direct and proximate result of the said acts and omissions of the defendants, each individual Plaintiff suffered the following damages and injuries:

a. A violation of their rights under the Fourth and Fourteenth Amendments of the Constitution.

b. Falsely being arrested and accused.

12

c.  Maliciously prosecuted.
d.  Loss of physical liberty due to incarceration.
e.  Further restrictions of their liberty due to court appearances.
f.  Humiliation, embarrassment and injury to their reputation.
g.  Extreme emotional distress.
h.  Physical pain and suffering due to injuries sustained, such as shoulder injuries, bruised ribs, injury to teeth due to being propelled to ground, and other physical injuries.
i.  Having brutal and excessive forced used against them.
j.  Severe disruption of family life.
k.  Infliction of emotional distress
l.  Assault and battery.

WHEREFORE, each and every one of the Plaintiff requests the following relief as against all of the defendants:

1.  Award compensatory damages in an amount determined by the court/jury,
2.  Award attorney's fees and reasonable compensation for services rendered in connection with this action.
3.  For such other and further relief as this Court may deem just and proper.
4.  Money damages in the amount of $50,000,000.00 per Plaintiff.

Andres M. Aranda, Esq.

Attorney for Plaintiffs

930 Grand Concourse, Suite 1A

Bronx, NY 10451

1-718-541-9244

arandaoffice@gmail.com

13